# U.S. BANKRUPTCY COURT
## District of South Carolina

Case Number: **21-02421-jw**

## ORDER

The relief set forth on the following pages, for a total of 10 pages including this page, is hereby ORDERED.

**FILED BY THE COURT**
**01/14/2022**



*signature*

US Bankruptcy Judge
District of South Carolina

Entered: 01/14/2022

**UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| In re,<br><br>James Boyd Gregory and Kimberly Gregory,<br><br>Debtors. | C/A No. 21-02421-JW<br><br>Chapter 13 |

**ORDER OVERRULING OBJECTION TO CONFIRMATION**

This matter comes before the Court upon an Objection to Confirmation of the Chapter 13 Plan filed by James Boyd Gregory and Kimberly Gregory ("Debtors"). Through the Objection, Wilmington Savings Fund, FSB, d/b/a Christiana Trust as Trustee for PNPMS Trust III ("Creditor") objects to Debtors' attempt to strip off Creditor's mortgage lien from Debtors' real property. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A). Based on the presentation made by the parties, the Court makes the following findings of facts and conclusions of law.

**FINDINGS OF FACT**

Debtors own real property at 1224 Island View Drive, Mount Pleasant, South Carolina ("Property"), which serves as Debtors' principal place of residence. A first-priority mortgage lien ("First Mortgage") originated and recorded with the Register of Deeds for Charleston County, South Carolina ("Register of Deeds") in 2007 encumbers the Property. In 2008, Debtor James B. Gregory obtained a junior priority mortgage loan ("Second Mortgage") with CitiFinancial, Inc. to borrow the principal sum of $16,157.26. Both Debtors executed the mortgage lien for the Second Mortgage. The Second Mortgage was recorded in the chain of title for the Property with the Register of Deeds on February 11, 2008. The Second Mortgage went into default when the May 11, 2018, payment was missed.

On December 15, 2020, the servicing rights for the Second Mortgage transferred from Specialized Loan Servicing LLC to Statebridge Company LLC ("Statebridge"). In the notice of transfer of servicing rights, Statebridge's address for inquiries regarding the Second Mortgage is listed as 6061 S. Willow Dr., Suite 300, Greenwood Village, Colorado, 80111 ("Greenwood Village Address").

More than three years after the default, Statebridge sent Debtors a Notice of Intent to Accelerate, on May 25, 2021, to demand a reinstatement payment of $8,008.86 within the next 35-days to cure the default and avoid foreclosure. After transmission of the Notice of Intent to Accelerate, the Second Mortgage was assigned and transferred to Creditor on June 3, 2021. About a month later, Statebridge, which continued as the servicer of the Second Mortgage, sent Debtors a payoff statement that provided a payoff balance of $16,233.45. In the payoff statement, the Greenwood Village Address was listed as the mailing address for Statebridge. Further, Creditor's counsel, McMichael Taylor Gray, LLC (the "Creditor's Counsel") sent Debtors a letter on July 21, 2021, pursuant to the Fair Debt Collection Practices Act ("FDCPA") to notify Debtors that Creditor's Counsel represented Creditor and to disclose the total balance owed and provide the opportunity to dispute amounts owed under the Second Mortgage within 30 days of receiving the letter and/or notify the law firm of any bankruptcy filings.[1]

On September 17, 2021, Debtors filed their Chapter 13 bankruptcy petition. Along with their bankruptcy petition, Debtors also filed and served a proposed Chapter 13 plan. Under their initial proposed plan, Debtors included a motion to value the Second Mortgage at zero and to strip off the Second Mortgage lien from the Property. Debtors served the proposed chapter 13 plan on

---

[1] The July 21, 2021, letter requested Debtor to fax their bankruptcy case information to Creditor' Counsel as follows: "If you are involved in an active bankruptcy case and no relief from the automatic stay has been obtained by your lender, please immediately fax your bankruptcy information to 404-745-8121."

Creditor at two addresses: one they obtained from their credit report[2] and another in care of the Creditor's Counsel.[3]

Despite this service,[4] Creditor did not file a timely objection to the initial proposed chapter 13 plan or valuation provision. Debtors amended their proposed plan multiple times by filing a modified plan pre-confirmation on September 20, 2021; November 10, 2021; and November 15, 2021, the latter of which is the plan presently before the Court. For each modified plan, Debtors' counsel mailed a copy of the modified plan to the same addresses used to circulate Debtors' initial proposed plan and the notice of the filing of the bankruptcy petition.

On November 24, 2021, which was two days before the claim bar date, Creditor's Counsel filed a proof of claim for the Second Mortgage in the name of Creditor with Statebridge identified as the party to which notices and payments for the Second Mortgage should be sent.[5] The timely filing of the proof of claim by Creditor's Counsel indicates that Creditor received actual notice of the bankruptcy case and its docket. About two weeks later and three days before the confirmation

---

[2] The creditor report identified Statebridge as the entity with an interest in the Second Mortgage, and it further noted that Statebridge maintained a "Bankruptcy-Specific Address" as follows:
Bsi Financial Services
Attn: Bankruptcy
P.O. Box 517
Titusville, PA 16354

[3] In addition to mailing a copy of their proposed plan to the address noted in the credit report, Debtors' counsel also served Debtors' proposed plan to Creditor's Counsel as follows:
Bsi Financial Services
c/o McMichael, Taylor, Gray
3550 Engineering Drive, Suite 260
Norcross, GA 30092-2871

[4] Debtors provided notice of their bankruptcy case to Creditor at the same addresses used for service of their plans.

[5] The CM/ECF claims filing system provides an option for a claim filer to add the party to receive further notice by adding the claim filer to the Court's mailing matrix. In this case, Creditor's Counsel, which filed Creditor's proof of claim, did not add either its or Statebridge's name and address to the Court's mailing matrix. Instead, Creditor's Counsel only added Creditor's name and not the address to the matrix. For these reasons, the Court's records appear incomplete.

hearing, Creditor's Counsel, on December 6, 2021, filed and served an objection to the modified plan that Debtors filed on November 15, 2021. Since this objection was filed within the period for objections provided in the notice accompanying the plan, the objection was timely. This timely filing demonstrates Creditor's actual and sufficient notice of the plan and its valuation provision.

In the objection, Creditor's Counsel only asserted that Debtors' attempt to strip-off the lien for the Second Mortgage from the Property was prohibited by the anti-modification provisions of 11 U.S.C. § 1322(b)(2) because the Second Mortgage encumbered the Property, which served as Debtors' principal residence. Notably, the objection did not assert a failure of proper service pursuant to Rule 7004 of the Federal Rules of Bankruptcy Procedure, a lack of actual notice of the valuation provision included in the amended plan filed on November 15, 2021, or assert a different or greater value of the Property or the prior lien than that asserted by Debtors.

Debtors' counsel filed a response to Creditor's plan objection on December 7, 2021, and argued that Creditor was bound to the treatment of the Second Mortgage in Debtors' modified plan because Creditor failed to file a timely objection to Debtors' initial plan of reorganization filed on September 17, 2021, and subsequent modified plans, which all provided a lien value of zero, stripped off the Second Mortgage from the Property, and treated Creditor's claim as unsecured. According to Debtors' counsel, Creditor's failure to timely object to the initial plan filed by Debtors constituted Creditor's acceptance of Debtors' treatment of the Second Mortgage as provided by 11 U.S.C. §§ 1323(c) & 1325(a)(5) and *In re Stephens,* No. 18-01736-JW, slip op. (Bankr. D.S.C. Oct. 16, 2018). Because the treatment of the Second Mortgage remained unchanged from the initial plan through every subsequent modified plan that Debtors filed, Debtors argued that Creditor's objection was untimely and should be overruled. Debtors' counsel reiterated this argument in a statement of dispute filed on December 7, 2021.

In a statement of dispute filed on December 8, 2021, which was the day before the confirmation hearing on Debtors' plan filed on November 15, 2021, Creditor's Counsel asserted for the first time that Debtors' initial plan of reorganization was never properly served on Creditor or its servicer Statebridge, and thus, Creditor's objection to the plan was timely and not barred as argued by Debtors' counsel.[6] During the confirmation hearing held on December 9, 2021, Creditor's Counsel did not argue the § 1322(b) prohibition or present any evidence showing that the value of the Property exceeded the balance of all prior encumbrances leaving some amount of equity for the Second Mortgage. Instead, Creditor's Counsel alleged the incorrect service of prior plans and requested more time to engage an appraiser and value the Property to determine if Creditor could *potentially* contest Debtors' valuation amount. Debtors' counsel objected to the delay of a further continuance and requested that the objection filed by Creditor be overruled.

## CONCLUSIONS OF LAW

I.  **Determination of Creditor's objection to confirmation on the merits is appropriate.**

Amended Bankruptcy Rule 3012(b), effective December 1, 2017, permits a debtor to request a valuation of encumbered property in a plan but requires service of the plan on the affected creditor to comply with Rule 7004 of the Federal Rules of Bankruptcy Procedure. In *United Student Aid Funds, Inc. v. Espinosa*, however, the Supreme Court held that when a creditor has

---

[6] While the separate statements of dispute, both of which were late filed, tilted the arguments at the hearing towards the issue of a prior acceptance of the valuation due to Creditor's failure to timely object and dispute the validity of service of prior proposed plan(s), statements of disputes are not pleadings but merely a tool to assist the court and parties in organizing their arguments and evidence to be presented at a contested hearing according to Rule 9014(e) of the Federal Rules of Bankruptcy Procedure. New issues or arguments beyond the pleadings cannot be raised through a statement of dispute. *See In re Travers*, No. 21-01786-jw, slip op. at 10 (Bankr. D.S.C. Dec. 21, 2021) (declining to consider arguments and issues that were not included in a debtor's objection to claim but added to a reply brief and statement of dispute filed after the service of the objection to claim).

actual notice, due process requirements are met and a failure to comply with Rule 7004 of the Federal Rules of Bankruptcy Procedure is not a jurisdictional defect. 559 U.S. 260, 272 (2010).[7]

By the filing of a timely objection[8] which was directed at the valuation provision, it is evident that Creditor had adequate notice and due process in this matter. In Creditor's timely objection to the plan, Creditor never asserted a lack of proper service under Rule 7004 as grounds to preclude confirmation of the plan. The undisputed record for this case reflects that Creditor had actual notice of Debtors' bankruptcy case as of or before November 24, 2021, when its counsel timely filed a proof of claim. Furthermore, the record reflects that Creditor had actual notice of Debtors' valuation of the Second Mortgage because Creditor timely filed an objection to the November 15, 2021, Chapter 13 plan, which is the plan currently being considered by the Court.

Because there is no dispute that Creditor received actual notice of the November 15, 2021, plan and filed a timely objection, the Court concludes that consideration of the merits of Creditor's objection is appropriate despite any alleged non-compliance with the service requirements imposed by Rule 7004. *See In re Cooper King Inn, Inc.*, 918 F.2d 1404, 1406-07 (9th Cir. 1990) (holding that creditor's participation in contested hearing precluded creditor's due process argument that bankruptcy court's failure to apply adversary proceeding procedures prejudiced creditor); *Bank of New York Mellon v. Wittman*, 2013 WL 173801 at *2 (concluding that

---

[7] While Creditor's Counsel argued a failure of proper service, the question of whether a particular type of service is necessary becomes moot if the affected creditor participates in the confirmation process and the disputed issue is determined. *See, e.g., Bank of New York Mellon v. Wittman*, No. 12-C-846, 2013 WL 173801, at *2 (E.D. Wisc. Jan. 16, 2013). Courts have recognized that a creditor's litigation of a disputed issue in connection with plan confirmation, even where heightened service under Rule 7004 is required, results in waiver of such service requirements if the creditor fails to timely insist on application of such procedures in its pleadings. *See, e.g., Matter of Pence*, 905 F.2d 1107, 1109 (7th Cir. 1990) (recognizing that adversary proceeding complaint in bankruptcy is not a prerequisite to federal court jurisdiction and that a party may waive its right to object to the absence of adversary proceeding procedures).

[8] Based on the Court's findings, it is unnecessary to determine whether prior plans were served correctly and whether 11 U.S.C. § 1323(c) applies.

determining merits of claims objections related to enforceability of mortgage liens without application of adversary proceeding procedures was appropriate because creditor received notice to litigate merits of the objection and actually litigated the merits of lien viability).

> II. **Creditor's objection to confirmation fails as a matter of law and must be overruled.**

In the Fourth Circuit and the majority of federal circuit courts of appeal, Chapter 13 debtors are permitted to strip off wholly unsecured junior liens encumbering real property used as the debtors' principal place of residence. *Burkhart v. Grigsby*, 886 F.3d 434, 437 (4th Cir. 2018). Critically, the Fourth Circuit has "held consistent with every other circuit to have considered the question, that in a typical Chapter 13 proceeding, a bankruptcy court has the authority to strip off a completely valueless lien on a debtor's primary residence, thereby eliminating a lienholder's *in rem* rights against the collateral property." *Id.* (quoting *In re Alvarez*, 733 F. 3d 136, 138 (4th Cir. 2013)) (internal quotations omitted).

In its objection to confirmation, Creditor only asserted that as a matter of law that 11 U.S.C. § 1322(b)(2) forbids the valuation of a mortgage lien on residential real property. However, Creditor is wholly incorrect in its argument. Therefore, Creditor's citation to § 1322(b)(2) to the contrary is unavailing. Although § 1322(b)(2) precludes the modification of the rights of secured claims "secured only by a security interest in real property that is the debtor's principal residence," the Fourth Circuit has concluded that "a nominally secured creditor with an entirely underwater lien does not fall within the anti-modification clause and is viewed as holding an unsecured claim." *Id.* at 438 (citing *In re Davis*, 716 F.3d 331, 335-36 (4th Cir. 2000)). Further, "whether a lien claimant is the holder of a secured claim or an unsecured claim under § 1322(b)(2) turns on whether the claimant's securing interest has any actual value." *Id.* at 440 (quoting *In re Lane*, 280 F.3d 663, 669 (6th Cir. 2002)) (internal quotations omitted). To this end, junior liens are

effectively unsecured if the value of the collateral is entirely encumbered by other liens senior in priority, leaving nothing of value for the junior lien to encumber for purposes of being considered a "secured claim" under § 1322(b)(2). *Id.* (holding that whether a creditor has an unsecured claim for purposes of 11 U.S.C. § 1322(b)(2) turns on the value of the underlying collateral not the mere existence of a security interest).

The record also reflects that Creditor did not present any argument or evidence challenging Debtors' position that the value of the Property is less than the balance of the first mortgage, leaving no equity for the Second Mortgage to be characterized as a "secured claim" under § 1322(b)(2). Indeed, the Creditor's objection does not contest Debtors' statement of the value of the Property or contest the balance of the priority liens against the Property. Instead, Creditor narrowly argues that the process of valuation of the Second Mortgage is not legally allowed.[9] Because Creditor failed to present any contrary factual arguments contesting the valuation made by Debtors in their proposed plan,[10] the Court concludes that Creditor has conceded Debtors' valuation of the collateral and balance of existing priority liens to permit the treatment proposed in the plan. *Cf. Nurse v. A Better Choice Case Management, LLC*, C/A No. 9:21-cv-455-MBS-MHC, 2021 WL 3410791 (D.S.C. June 4, 2021) *adopted in part by* 2021 WL 3088047 (D.S.C. Jul. 22, 2021); *Ford v. NEWREZ, LLC*, C/A No. 4:20-cv-02789-SAL, 2020 WL 9397557, at *5

---

[9] While Creditor asked in its statement of dispute filed on the eve of the hearing and again at the confirmation hearing for an opportunity to conduct an appraisal, Debtors' counsel objected to the severely late request. Here, Creditor's Counsel did not properly or timely request a continuance of the hearing. The Court notes that Creditor filed its proof of claim on November 24, 2021, which indicated that it had notice of the plan at that time and that it had plenty of time before the December 9, 2021, hearing to request a continuance but did not. According to Operating Order 21-5, its predecessors and the undersigned's Chambers Guidelines, requests to continue a contested hearing must be made no later than 3 days before the hearing, which in this case was also the date Creditor filed its actual objection to Debtors' November 15, 2021, plan.

[10] The Court would further note that the Creditor effectively conceded at the hearing that it lacked evidence to prove sufficient value in the Property to render the Second Mortgage a secured claim for purposes of 11 U.S.C. § 1322(b)(2) because Creditor's Counsel requested more time so it could pursue such evidence in the form of an appraisal to be conducted in the future.

(D.S.C. Nov. 20, 2020) (noting that plaintiff's failure to address argument in a motion to dismiss conceded argument).[11]

Here, the Court cannot speculate that the value of the Property exceeds the balance of any prior liens and must conclude that the first mortgage encumbering the Property consumes all value in the Property and that the Second Mortgage is effectively unsecured. *See Burkhart v. Grigsby*, 886 F.3d at 440 (reversing district court's affirmation of bankruptcy court's denial of default judgment on debtor's adversary proceeding seeking to strip off junior lien that was unsecured for purposes of § 1322(b)(2) because value of collateral did not exceed priority encumbrances). Accordingly, Creditor's objection to confirmation fails as a matter of law.

## CONCLUSION

For the foregoing reasons, the Court hereby **OVERRULES** Creditor's objection to confirmation of the Debtors' plan filed on November 15, 2021. The Trustee may submit a proposed order confirming that plan.

**AND IT IS SO ORDERED.**

---

[11] The Court also finds that because Creditor failed to directly contest the valuation provided by Debtors in their November 15, 2021 plan, Creditor is deemed to have accepted such valuation under 11 U.S.C. §1325(a)(5)(A). *See, e.g., In re Crawford*, 532 B.R. 645, 650 (Bankr. D.S.C. 2015). The Creditor may also be subject to a default judgment on the affirmative relief requested in the valuation provision in the November 15, 2021, plan pursuant to Fed. R. Bankr. P. 7055, which applies to contested matters under Fed. R. Bankr. P. 9014(c).